**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**DERRICK ANDERSON,**

                    **Plaintiff,**

          **v.**                                                            **19-CV-297 (HKS)**

**BURLINGTON INSURANCE COMPANY,**
**and Y S BAD INC. d/b/a SINFUL,**

                    **Defendants.**

_____

## <u>DECISION AND ORDER</u>

The Honorable William M. Skretny referred this case to the undersigned for all
pretrial matters pursuant to 28 U.S.C. 636(b)(1)(A). Dkt. 8. The parties subsequently
consented to the exercise of jurisdiction by a United States Magistrate Judge in
accordance with the provisions of 28 U.S.C. § 636(c). Dkt. 12.

In a prior state court action (the "Underlying Action"), Plaintiff Derrick Anderson
obtained a judgment against YS BAD Inc. d/b/a Sinful ("Sinful") for negligent hiring,
negligent training, and negligent supervision. _See_ Dkt. 1-3, at 6–7. Pursuant to N.Y. Ins.
Law § 3420(b), Plaintiff seeks to enforce that judgment against Sinful's insurer,
Burlington Insurance Company ("Burlington"), alleging that it wrongfully disclaimed
coverage to Sinful in the Underlying Action. _See_ Dkt. 1-2, at 16. Burlington moved for
summary judgment and to stay discovery. Dkts. 15, 17.  For the following reasons,
Burlington's motion for summary judgment is granted and its motion to stay discovery is
denied as moot.

## BACKGROUND

**I.     UNDERLYING ACTION**

On March 14, 2014, Plaintiff commenced the Underlying Action in New York

State Supreme Court, County of Erie, against the City of Buffalo, City of Buffalo Police

Department, Police Officer Cedric Littlejohn, and an unknown police officer. *See* Dkt.

15-4. In his first cause of action, he alleged that the police officer defendants assaulted

him and thus deprived him of his constitutional rights in violation of 42 U.S.C. § 1983

("section 1983"):

> 10. Upon information and belief, while acting under color of law in their
> official capacity of police officers, the defendants, POLICE OFFICER
> CEDRIC LITTLEJOHN and JOHN DOE, deprived the plaintiff, DERRICK
> ANDERSON, of the privileges and immunities guaranteed to every citizen
> of the United States, including plaintiff, by the United States Constitution
> Amendments IV, V and Section 1 of Amendment XIV.
>
> 11. On or about the 26th day of January, 2013, at the premises of Sinful,
> located at 334 Delaware Avenue in the City of Buffalo, County of Erie, the
> State of New York, the defendant police officers named herein, acting in
> their official capacity as police officers, and pursuant to the authority granted
> to them, and while acting under color of state law, did willfully, maliciously,
> and intentionally assault and strike, without provocation, the plaintiff,
> DERRICK ANDERSON, causing serious injuries to said plaintiff, along with
> property loss.
>
> 12. Upon information and belief, the foregoing actions of the defendants
> constituted deprivation of the rights and privileges of the plaintiff, DERRICK
> ANDERSON, secured and protected to him by the Constitution and Laws
> of the United States. As a result of the aforesaid actions, the plaintiff,
> DERRICK ANDERSON, was unlawfully assaulted and unconstitutionally
> deprived of his liberty and otherwise tortiously and maliciously harmed by
> the actions of the defendants, in violation of Title 42 of the United States
> Code § 1983, et sec.
>
> . . .
>
> 16. Upon information and belief, the acts of the defendants were willful,
> wanton and malicious and were done with the intent to injure plaintiff and
> deprive him of his civil rights.

2

Dkt. 15-4, at ¶¶ 10–12, 16. As a result of the incident, Plaintiff alleged that he "sustained

bodily injuries and was painfully and seriously injured . . . ." *Id.* at ¶ 14. In his second

cause of action, he alleged negligence claims against the City, police department, and

police officers:

> 23. Upon information and belief, the incident hereinbefore described and
> the resultant injuries were caused as a result of the negligent, careless,
> reckless and/or unlawful conduct on the part of the agents, servants and/or
> employees of the defendants, CITY OF BUFFALO, CITY OF BUFFALO
> POLICE DEPARTMENT, POLICE OFFICER CEDRIC LITTLEJOHN and/or
> JOHN DOE, and more particularly, among other things: in failing and
> omitting to ensure its police officers used appropriate care and discretion;
> in failing and omitting to properly and adequately instruct, supervise and
> train its police officers; in negligently striking the plaintiff, without just cause
> or provocation; and in negligently hiring, POLICE OFFICER CEDRIC
> LITTLEJOHN and JOHN DOE.

Dkt. 15-4, at ¶ 23.

On June 11, 2015, Plaintiff filed an amended complaint, which realleged the

above claims against the original defendants. *See* Dkt. 15-5, at ¶¶ 13–24. Plaintiff also

named Sinful, the operator of the nightclub, and 120 W. Tupper Street, Inc., the

premises owner, as Defendants to assert negligence claims against them. *See* Dkt. 15-

5. As to Sinful, he alleged:

> 34. Upon information and belief, on or about the 26th day of January, 2013,
> the plaintiff, DERRICK ANDERSON, was caused to sustain serious injuries
> due to the negligence of the agents, servants and/or employees of the
> defendants, 120 W. TUPPER STREET, INC. and YS BAD, INC. d/b/a
> SINFUL.

> 35. Upon information and belief, the incident hereinbefore described and
> the resultant injuries were caused as a result of the negligence,
> carelessness, recklessness and/or unlawful conduct on the part of the
> defendants 120 W. TUPPER STREET, INC. and YS BAD, INC. d/b/a
> SINFUL, by their agents, servants and/or employees in the ownership,
> operation, maintenance, management and control of the aforesaid
> premises and, among other things, said negligence of the defendants, by
> their agents, servants and/or employees was exhibited in defendants failing

to exercise proper control on its premises; in failing to exercise proper supervision on its premises; in failing to exercise good judgment; in intentionally assaulting and striking, without provocation, the plaintiff; in failing to properly train their agents, servants and/or employees and in failing and omitting to exercise due and reasonable care to avoid the incident.

*Id.* at ¶¶ 34, 35. On January 10, 2018, Plaintiff's action against 120 W. Tupper was discontinued and withdrawn. *See* Dkt. 15-6; Dkt. 18-7, at ¶ 9.

On February 16, 2018, the court granted the City of Buffalo and defendant police officers' motion for judgment "upon the ground that the plaintiff . . . failed to prove the allegations of his complaint," and dismissed the complaint against these defendants. Dkt. 15-7, at 1–2. The court granted Plaintiff's motion for judgment as a matter of law on its cause of action against Sinful "involving negligent hiring, negligent supervision, and negligent training," as Sinful "failed to provide a legally sufficient defense, or any rebuttal of the injuries evidenced by Plaintiff."[1] Dkt. 15-9, at 1. And on March 6, 2018, the court entered judgment against Sinful in the amount of $250,000 for past pain and suffering, $1,320.23 for medical expenses incurred, $7,398.90 for property losses incurred, and $250,000 for punitive damages. *Id.* at 2.

## II.   BURLINGTON POLICY AND COVERAGE DISPUTE

Burlington issued Sinful a Commercial General Policy (the "Burlington Policy"), effective November 23, 2012 through November 23, 2013. *See* Dkt. 15-3, at 3. Relevant here, the Burlington Policy contains an exclusion for bodily injury or property damage

---

[1] According to Burlington, "Sinful failed to appear in the underlying action." Dkt. 15-2, at 5. Plaintiff disputes this, claiming that "Sinful appeared in the underlying action by appearance at trial by Sinful's majority stakeholder who offered sworn testimony[.]" Dkt. 18-7, at ¶ 13. It appears that Sinful was not represented by counsel during the Underlying Action, as there was "no opposition . . . made" to Plaintiff's motion for judgment as a matter of law. Dkt. 15-9, at 1.

4

arising out of assault, battery, or other physical altercation (the "Assault and Battery

Exclusion"):

> **D.** This insurance does not apply to:
> **a. Assault, Battery Or Other Physical Alteration**[2]
> "Bodily injury" or "property damage":
> (1) Expected or intended from the standpoint of any insured.
> (2) Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person.
> (3) Arising in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or "battery."
> (4) Arising in whole or in part out of any actual or threatened verbal or physical contraction or altercation committed or act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation.[3]

Dkt. 15-3, at 45. The Assault and Battery Exclusion also explicitly provides that the

Exclusion applies to all theories of liability asserted against any insured:

> **G.** The exclusions added in paragraphs D, E, and F of this endorsement apply to all acts or omission, including any act or omission in responding to or failing to respond or render aid, medical or otherwise, to any victim of the "assault" or "battery" or physical confrontation or altercation, and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.

*Id.* The Burlington Policy also contains the following exclusion for punitive damages (the

"Punitive Damages Exclusion"):

---

[2] The Assault and Battery Exclusion defines assault as "any attempt or threat to inflict injury upon the person of another, or any display of force such as would give a person reason to fear or expect immediate bodily harm" and battery as "physical contact with a person without his or her consent that entails some injury or offensive touching." Dkt. 15-3, at 45.

[3] Paragraph F of the Assault and Battery exclusion excludes from coverage "[a]ny 'damages' arising out of any actual, alleged or threatened 'assault' or 'battery.'" Dkt. 15-3, at 45.

**I.**  This insurance does not apply to:
**Punitive Damages**
Any claim or indemnification for punitive or exemplary damage. If a "suit" seeking both compensatory and punitive or exemplary damages has been brought against you for a claim covered by this policy, we will provide defense for such action. We will not have any obligation to pay for any fees, including but not limited to attorneys' fees, costs, interest or damages attributable to punitive or exemplary damages.

*Id.* at 14.

The underlying incident at the Sinful nightclub allegedly occurred on January 26, 2013. Dkt. 15-2, at ¶ 15; Dkt. 18-7, at ¶ 15. Plaintiff filed a Notice of Claim against the City of Buffalo and the Buffalo Police Department on April 25, 2013. Dkt. 1-2, at ¶ 14. On January 6, 2014, Lawley Agency LLC, on behalf of Sinful, sent Burlington notice of the incident and a copy of the Notice of Claim. *See* Dkt. 15-10. On January 16, 2014, Burlington sent a letter to Sinful disclaiming coverage based on, *inter alia*, the Assault and Battery and Punitive Damages Exclusions. *See* Dkt. 15-11, at 1–8.

On March 5, 2015, Officer Littlejohn demanded that Burlington defend him pursuant to the Burlington Policy. *See* Dkt. 15-12. Burlington denied Littlejohn's tender, and informed Sinful of that denial on March 17, 2015. *See* Dkt. 15, at 1. On September 21, 2015, Officer Littlejohn requested reconsideration of Burlington's denial of coverage in light of Plaintiff's amended complaint, which asserted negligence causes of action against Sinful. *See* Dkt. 15-14, at 3. Burlington reiterated its denial of coverage on October 5, 2015. *See* Dkt. 15-15.

## III.   PROCEDURAL HISTORY

Plaintiff Derrick Anderson filed a complaint for declaratory judgment in New York State Supreme Court, County of Erie, against Defendants Burlington and Sinful. *See*

Dkt. 1-2, at 9-16. Pursuant to N.Y. Ins. Law § 3420(b), Plaintiff seeks (1) a declaration that Sinful was entitled to coverage in the Underlying Action; (2) a declaration that Burlington's coverage disclaimers are void and unenforceable; and (3) judgment against Burlington in an amount equal to the judgment Plaintiff obtained against Sinful in the Underlying Action. Dkt. 1-2, at 16. Burlington removed this action to the Southern District of New York, which subsequently transferred the case to this Court. *See* Dkts. 1, 4. Burlington answered, and asserted a counterclaim for a declaration that it does not owe coverage to Sinful, and thus Anderson, for the claims asserted in the Underlying Action. *See* Dkt. 7, at 14. Burlington moves for summary judgment and seeks: (1) a declaration that it has no coverage obligation in connection with the Underlying Action and (2) a declaration that it has no duty to indemnify Plaintiff on behalf of Sinful for any punitive damages. *See* Dkt. 15-1, at 9.

Burlington argues that the undisputed facts conclusively establish that the Assault, Battery, and Other Physical Altercation Exclusion bars coverage with respect to the Underlying Action. *Id.* at 6–9. Burlington further argues that its disclaimer to Sinful was timely. *Id.* at 10. In support of its motion, Burlington submitted an affidavit from Mitchell Jacobs, a Regional Claims Manager employed by Burlington. *See* Dkt. 15-24. And Burlington requests that the Court order Plaintiff to pay the reasonable expenses Burlington incurred in participating in mediation. *Id.* at 10–13.

In response, Plaintiff primarily argues that there is at least a genuine dispute as to the material facts—namely, whether the Assault & Battery Exclusion bars coverage where the underlying judgment is based exclusively on negligence claims against Sinful and whether Burlington's disclaimer, issued one year after the underlying incident, was

timely. *See* Dkt. 18-8, at 4. Plaintiff also argues that he is entitled to responses to his outstanding discovery demand, and therefore Burlington's motion should be denied as premature. *See id.* at 10–11.

## DISCUSSION

I.  **LEGAL STANDARDS**

    A.  **Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "view the evidence in the light most favorable to the party against whom the motion was made and to draw all reasonable inferences in favor of that party." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). Thus, the court "should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party." *DeJesus v. Malloy*, 531 F. Supp. 3d 650, 657 (W.D.N.Y. 2021), *reconsideration denied,* 582 F. Supp. 3d 82 (W.D.N.Y. 2022).

"Demonstrating that such issues exist requires the nonmovant to 'do more than simply show that there is some metaphysical doubt as to the material facts." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "[M]ere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Quarles v. Gen. Motors Corp. (Motors Holding Div.)*, 758 F.2d 839, 840 (2d Cir. 1985). The "mere existence of a scintilla of evidence in support of the [non-movant's

position] will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *McKinney*, 49 F.4th at 738 (citation omitted). Thus, "rather than merely 'deny the moving party's allegations in a general way,' the party opposing summary judgment 'must present competent evidence that creates a genuine issue of material fact.'" *Id.* (quoting *FEC v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002)).

### B.    N.Y. Ins. Law § 3420(b)

N.Y. Ins. Law § 3420(b) "grants an injured party a right to sue the tortfeasor's insurer, but only under limited circumstances—the injured party must first obtain a judgment against the tortfeasor, serve the insurance company with a copy of the judgment and await payment for 30 days." *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 354 (N.Y. 2004). Compliance with these requirements "is a condition precedent to a direct action against the insurance company." *Id.* Here, Plaintiff has satisfied the requirements to bring this action pursuant to § 3420(b), which Burlington does not dispute. *See* Dkt. 1-3. Plaintiff, "by proceeding directly against defendant, does so as subrogee of the insured's rights and is subject to whatever rules of estoppel would apply to the insured." *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 665 (N.Y. 1990).

## II.    ASSAULT AND BATTERY EXCLUSION

Burlington argues that the Assault and Battery Exclusion bars coverage for Plaintiff's injuries, even though Plaintiff asserted negligence claims against Sinful in the Underlying Action. *See* Dkt. 15-1, at 7. Plaintiff argues there is a genuine dispute as to whether the Assault and Battery Exclusion bars coverage where, as here, there was no finding of assault and battery in the Underlying Action, and the judgment at issue is

based exclusively on negligence claims against Burlington's insured, Sinful.[4] *See* Dkt. 18-8, at 4.

### A.   Duty to Defend[5]

Under New York Law, "the duty to defend is 'exceedingly broad' and more expansive than the duty to indemnify." *Int'l Bus. Machines Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir. 2002) (citation omitted). The duty to defend an insured "is derived from the allegations of the complaint and the terms of the policy." *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 714 (2007) (citation omitted). The New York Court of Appeals has held that "an insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65 (N.Y. 1991).

---

[4] Burlington asserts that Plaintiff "has acknowledged, by relying on a [§] 3420 waiver argument, that the exclusions in the Burlington Policy unambiguously exclude coverage . . . with respect to the Underlying Action." Dkt. 15-1, at 6. But Plaintiff's complaint for declaratory judgment alleges that the "exclusionary language and policy terms cited in Burlington's disclaimers do not apply to bar coverage." Dkt. 1-2, at ¶¶ 27, 34.

[5] "If the policy is clear and unambiguous as to the duty to defend, the policy must be enforced according to its terms." *120 Greenwich Dev. Assocs., L.L.C. v. Admiral Indem. Co.*, No. 08 CIV. 6491 (LAP), 2013 WL 12331487, at *6 (S.D.N.Y. Sept. 25, 2013) (citing *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004)). Here, Plaintiff does not argue that any provisions in the Assault and Battery Exclusion are ambiguous. Moreover, New York courts consistently find similar Assault and Battery Exclusions to be unambiguous. *See, e.g.*, *U.S. Underwriters Ins. Co. v. Val-Blue Corp.*, 85 N.Y.2d 821, 823 (N.Y. 1995) ("[T]he language of the exclusion for suits 'based on Assault and Battery' is unambiguous."); *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 88 N.Y.2d 347, 351 (N.Y. 1996) ("[T]he phrases 'based on' and 'arising out of', when used in insurance policy exclusion clauses, are unambiguous and legally indistinguishable.").

The insured "has the initial burden of proving that the damage was the result of an 'accident' or 'occurrence' to establish coverage where it would not otherwise exist."[6] *Consol. Edison Co. of New York v. Allstate Ins. Co.*, 98 N.Y.2d 208, 220 (N.Y. 2002). Once coverage is established, "the insurer bears the burden of proving that an exclusion applies." *Id.* To be relieved of its duty to defend, "the insurer bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (N.Y. 1997).

To successfully invoke the exclusion, Burlington must demonstrate that Plaintiff's claims in the Underlying Action arose out of assault, battery, or other physical altercation. *See Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 880 F.3d 64, 71 (2d Cir. 2018). Under New York law, "a court makes such a determination by examining whether the asserted claim could succeed but for the excluded conduct." *Id.*; *see Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 88 N.Y.2d 347, 350 (N.Y. 1996) ("[I]f no cause of action would exist but for the assault, the claim is based on assault and the exclusion applies."). Accordingly, under New York law, "a cause of action that would not have arisen but for an assault is barred by an applicable assault and battery exclusion." *Atl.*

---

[6] Here, Burlington does not dispute that the underlying incident qualifies as an "occurrence" or "accident" as defined by the Policy, and therefore the Court need not address this threshold issue. *See generally* Dkt. 15-1 (arguing that exclusions bar coverage); Dkt. 18-7 (referring to the underlying incident as an "accident").

*Cas. Ins. Co. v. Coffey*, 548 F. App'x 661, 663 (2d Cir. 2013) (summary order). Thus, "if the plaintiff in an underlying action or proceeding alleges the existence of facts clearly falling within such an exclusion, and none of the causes of action that he or she asserts could exist but for the existence of the excluded activity or state of affairs, the insurer is under no obligation to defend the action." *Beazley*, 880 F.3d at 71.

Plaintiff argues that the negligence causes of action are "patently covered" under the Burlington Policy. Dkt. 18-8, at 7.

> To be sure, plaintiff's amended complaint in the underlying action alleges "negligent, careless, reckless and/or unlawful conduct," "negligent[] striking plaintiff," tortious harm, negligent hiring, negligent training, negligent supervision, and creation of dangerous and defective conditions on the premises, negligent ownership, operation, maintenance, management and control of the premises, and that he "was caused to sustain serious injuries due to the negligence of the agents, servants and/or employees of the defendants," and "as a result of the negligence, carelessness, recklessness and/or unlawful conduct on the part of the defendants." See Ex. Ex. 2 at ¶¶ 34; 35. These negligence causes of action are patently covered by Burlington's "exceedingly broad" duties to its insureds under settled New York law.

*Id.* at 6–7. But "it is the nature of the underlying acts, not the theory of liability, that governs." *Sweet Home Cent. Sch. Dist. of Amherst & Tonawanda v. Aetna Com. Ins. Co.*, 263 A.D.2d 949, 949 (4th Dep't 1999). The "analysis depends on the facts which are pleaded, not the conclusory assertions." *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162 (N.Y. 1992). Thus, while "the insured's negligence may have been a proximate cause of plaintiff's injuries, that only resolves its liability; it does not resolve the insured's right to coverage based on the language of the contract between him and the insurer. Merely because the insured might be found liable under some theory of negligence

does not overcome the policy's exclusion for injury resulting from assault."[7] *Mount Vernon Fire Ins. Co.*, 88 N.Y.2d at 352. The inquiry is "whether the injury alleged in the underlying actions arose out of the excluded conduct, because that is the question under the Policy, which does not ask which legal theory the insured uses to characterize the underlying allegations." *Gen. Star Indem. Co. v. Driven Sports, Inc.*, 80 F. Supp. 3d 442, 454 n.7 (E.D.N.Y. 2015).

In the Underlying Action, Plaintiff's first cause of action alleged that, on January 26, 2013, at the premises of Sinful, "the defendant police officers . . . did willfully, maliciously, and intentionally assault and strike [him], without provocation . . . causing serious injuries . . . along with property loss." Dkt. 15-5, at ¶ 14. He further alleged that "the acts of the defendants were willful, wanton, and malicious and were done with intent to injure plaintiff and deprive him of his civil rights." *Id.* at ¶ 19. In his second cause of action—against the City of Buffalo, City of Buffalo Police Department, and the defendant police officers—Plaintiff realleged those allegations of a "willfull[], malicious[], and intentional[] assault and strik[ing]." *Id.* at ¶ 25. He further alleged that "the *incident hereinbefore described* and the *resultant injuries* were caused as a result of the negligent, careless, reckless, and/or unlawful conduct on the part of the agents, servants and/or employees" of defendants, including, among other things, "in negligently striking [him], without just cause or provocation." *Id.* at ¶ 26 (emphasis added). And in his third cause of action—against Sinful—after realleging his assault

---

[7] The text of the Assault and Battery exclusion confirms that the exclusion applies to "all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, recklessness, or intentional tort . . . ." Dkt. 15-3, at 45.

allegations, Plaintiff alleged that "*the incident hereinbefore* described and the *resultant injuries* were caused as a result of the negligence, carelessness, recklessness and/or unlawful conduct on the part of" Sinful, "by their agents, servants and/or employees in the ownership, operation, maintenance, management and control of the aforesaid premises."[8] *Id.* at ¶¶ 28, 35 (emphasis added).

Where "a claim alleged in the complaint arises out of an operative act that is excluded from coverage, then that derivative claim is also excluded." *Ma-Do Bars, Inc. v. Penn-Am. Ins. Co.*, No. 1:09-CV-901 GLS DRH, 2010 WL 5138475, at *4 (N.D.N.Y. Dec. 9, 2010). The "operative act" here giving rise to recovery is the "willful[], malicious, and intentional[] assault and strik[ing], without provocation" of Plaintiff, which "caus[ed] serious injuries . . . along with property loss." Dkt. 15-5, at ¶ 14. Plaintiff's amended complaint confirms this—his negligence claims are based on the "incident hereinbefore described" and "resultant injuries," which can only refer to Plaintiff's allegations of an intentional, unprovoked assault and the injuries that resulted from it. *See id.* at ¶¶ 26, 35. The "inclusion in the underlying complaint of causes of action sounding in negligence and alleging carelessness does not alter the fact that 'the operative act giving rise to any recovery is the assault [or battery].'" *Desir v. Nationwide Mut. Fire Ins. Co.*, 50 A.D.3d 942, 942 (2nd Dep't 2008); *see also Downtown Bar & Grill, Inc. v. Sphere Drake Ins. Co.*, No. 96 CIV. 6510 (DLC), 1997 WL 188139, at *4 (S.D.N.Y. Apr.

---

[8] Specifically, Plaintiff alleged that Sinful exhibited negligence "in failing to exercise proper control on its premises; in failing to exercise proper supervision on its premises; in failing to exercise good judgment; *in intentionally assaulting and striking*, without provocation, the plaintiff; in failing to properly train their agents, servants and/or employees and in failing and omitting to exercise due and reasonable care to avoid the incident." Dkt. 15-5, at 35 (emphasis added).

17, 1997) ("The 'operative act' giving rise to [Plaintiff]'s complaint was the fight in the

bar, and thus [his] cause of action would not exist but for the assault and battery."). In

deciding "whether the assault and battery exclusion applies . . . [the] Court must

determine whether the complaint in the underlying action alleges injury 'arising out of'

assault or battery." *First Fin. Ins. Co. v. LaPointe*, No. 1:04CV0413(NAM/DRH), 2005

WL 2218973, at *3 (N.D.N.Y. Sept. 12, 2005). The "injury being sued upon here is an

assault and battery. The plethora of claims surrounding that injury, including those for

. . . 'negligent [training,] hiring and supervision' are all 'based on' that assault and

battery without which [Plaintiff] would have no cause of action." *Val-Blue Corp.*, 85

N.Y.2d at 823. Therefore, despite Plaintiff's "assert[ion of] claims in the underlying

action sounding in negligence, it is clear that those claims would not exist 'but for' the

assault perpetrated against the [Plaintiff]."[9] *Northfield Ins. Co. v. Queen's Palace, Inc.*,

252 F. Supp. 3d 161, 168 (E.D.N.Y. 2017).

"If, based on a reading of the factual allegations, the essence of the cause of

action is, as here, assault, the plaintiff[] cannot exalt form over substance by labeling the

action as one to recover damages for negligence." *Schetzen v. Robotsis*, 273 A.D.2d

---

[9] In addition, the Assault and Battery Exclusion bars Plaintiff's recovery for his claim of
negligent hiring, negligent training, and negligent supervision because it provides that
coverage does not apply to "bodily injury" or "property damage" "[a]rising in whole or in
part out of any act or omission in connection with avoiding, preventing, suppressing, or
halting any actual or threatened 'assault' or 'battery.'" *See United Nat. Ins. Co. v.
Tunnel, Inc.*, 988 F.2d 351, 354 n.1 (2d Cir. 1993) (noting that "negligent hiring" cause
of action was excluded from coverage by the policy provision, because it expressly
excluded claims for assault and battery caused by the "omission by, the Insured, and/or
his employees"); *Mark Mc Nichol Enterprises, Inc. v. First Fin. Ins. Co.*, 284 A.D.2d 964,
964 (4th Dep't 2001) ("The claims of negligence in the underlying action, including those
for negligent supervision, are all claims '[a]rising out of assault or battery, or out of any
act or omission in connection with the prevention or suppression of an assault or
battery,' and thus fall within the exclusions of the commercial general liability policy.").

220, 220–21 (2nd Dep't 2000). When "a complaint alleges in a conclusory manner that an assault was committed negligently, an insurer has no duty to defend where the insured does not provide 'evidentiary support for the conclusory characterization of [the] conduct as negligent or provide an explanation of how the intrinsically intentional act[] of assault . . . could be negligently performed.'" *Scalzo v. Cent. Co-Operative Ins. Co.*, 186 A.D.3d 998, 999–1000 (4th Dep't 2020) (analyzing intentional acts exclusion) (quoting *Mugavero*, 79 N.Y.2d at 159). Thus, while Plaintiff also alleged "negligent striking" and that he "was caused to sustain serious injuries due to the negligence of the agents, servants, and/or employees" of Sinful, Dkt. 15-5, at ¶¶ 26, 34, his conclusory allegations of negligence are "totally inconsistent" with the factual allegations underlying his claims. *Monter v. CNA Ins. Companies*, 202 A.D.2d 405, 406 (2nd Dep't 1994*)* ("[T]he allegation that the [the alleged tortfeasor's] acts were committed 'in a manner constituting gross negligence which directly and proximately caused the [decedent's] death' was totally inconsistent with the allegation that an intentional, malicious assault was committed."). Plaintiff plead "[n]o different or additional facts" to support his negligence causes of action. *Id.* (citing *Mugavero*, 79 N.Y.2d at 159). "Nor does any reading of [Plaintiff's] motion papers suggest that there is any evidentiary support for the conclusory characterization of the [underlying police officer defendants'] conduct as grossly negligent or provide an explanation of how the intrinsically intentional acts of assault could be negligently performed." *Id.* at 406–07. Plaintiff's conclusory allegations of negligence, unsupported by—and in direct contradiction with—his underlying factual allegations that the police officer defendants "willfully, maliciously, and intentionally assault[ed] and str[uck] [him], without provocation" are therefore insufficient to bring his

16

claims outside the scope of the Assault and Battery Exclusion.[10] Dkt. 15-5, at ¶ 14; *see Scalzo*, 186 A.D.3d at 1000 (holding that complaint "contain[ing] no more than a conclusory characterization of [the alleged tortfeasor]'s conduct as negligent without any supporting factual allegations" did not contain "sufficient allegations of negligence to avoid the policy exclusion"); *Borrerro v. Haks Grp., Inc.*, 165 A.D.3d 1216, 1218 (2nd Dep't 2018) ("The amended complaint . . . failed to allege that the plaintiff's injuries were caused by any unintentional conduct attributable to [the alleged tortfeasor]. The fact that

---

[10] In *Nat'l Fire Ins. Co. of Hartford v. E. Mishan & Sons, Inc.*, the Second Circuit gave the following hypothetical:

> Suppose a plaintiff asserts battery and negligence claims against a defendant who is covered by policies similar to those applicable in this case. Suppose that the plaintiff's complaint contains allegations of the defendant's intentional misconduct and, in the alternative, negligent conduct. In such a case, the insurer would not be relieved of its duty to defend simply because the complaint included allegations of intent, as it cannot be "determined *with certainty* that the policy does not provide coverage." Rather, the defendant could be held liable for negligence if the factfinder finds the defendant acted only negligently.

650 Fed. App'x 793, 797 n.1 (2d Cir. 2016) (summary order) (citation omitted). The facts here are distinguishable from such a scenario. In *E. Mishan & Sons*, while "the plaintiffs in the underlying lawsuit assert[ed] that [the alleged tortfeasor] acted with knowledge, the actual conduct alleged d[id] not foreclose the possibility of recovery against [the alleged tortfeasor] on a negligence theory." *Id.* at 797 n.2. Here, the conduct alleged against the defendant police officers—the "operative act" that all of Plaintiff's claims arose from—was the "willful[], malicious[], and intentional[] assault and strik[ing]" of Plaintiff. Dkt. 15-5, at ¶ 14; *see United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 354–55 (2d Cir. 1993) ("Analysis begins with a recognition of the mutual exclusivity of negligence and battery. There is no such cause of action as negligent assault and battery. An assault and battery is an intentional act, whereas negligence is unintentional. Here it is plain that Bernstein is alleging that the bouncer intentionally struck him. And that makes it a claim for battery—not covered by the insurance policy. Bernstein's claim that the assault and battery arose from negligence because the bouncer did not intend the specific injuries he caused fares little better. It is hornbook law in New York, as in most other jurisdictions, that the intent which is an essential element of the action for battery is the intent to make contact, not to do injury.") (internal quotation marks and citations omitted).

the amended complaint generally alleged that [the alleged tortfeasor] acted 'negligently' does not change the analysis."); *Tower Ins. Co. of New York v. Old N. Blvd. Rest. Corp.*, 245 A.D.2d 241, 242 (1st Dep't 1997) ("Even if, as defendants allege, [the underlying plaintiff]'s injuries resulted from the bouncer's negligence, his affidavit makes it clear that his injuries 'arose from' an assault and battery, i.e., the altercation allegedly initiated by the bouncer, which involved McLane, his friends and the bouncers."); *Emerson Enterprises, LLC v. Kenneth Crosby-New York, Inc.*, 386 F. Supp. 2d 151, 161 (W.D.N.Y. 2005), *on reconsideration in part*, No. 03-CV-6530 CJS, 2007 WL 655761 (W.D.N.Y. Feb. 26, 2007) ("Although plaintiff included in the complaint an allegation that the contamination was 'sudden and accidental,' this conclusory assertion is insufficient to trigger a duty to defend where the specific factual allegations clearly allege that the contamination was intentional."); *cf. Anastasis v. Am. Safety Indem. Co.*, 12 A.D.3d 628, 630 (2nd Dep't 2004) ("Where *no intentional assaultive acts are alleged in the complaint* and the injuries may have resulted from 'unintentional acts' such as allegations that a bouncer 'negligently and carelessly escorted' a patron from the premises, the insurance carrier is required to defend notwithstanding the existence of an assault and battery exclusion.") (emphasis added) (quoting *Essex Ins. Co. v. T-Birds Nightclub & Rest., Inc.*, 229 A.D.2d 919, 920 (4th Dep't 1996)). Plaintiff's allegations that the police officer defendants willfully, maliciously, and intentionally assaulted him "cannot be magically transformed into negligent ones merely by [Plaintiff]'s allegations trying to recast them."[11] *State Farm Fire & Cas. Co. v. McCabe*, 162 A.D.3d 1294, 1296 (3rd Dep't

---

[11] In *Handlebar Inc. v. Utica First Ins. Co.*, 290 A.D.2d 633 (3rd Dep't 2002), the injured party alleged that he sustained personal injuries when an employee of a bar struck him with a baseball bat. In a criminal proceeding, the employee described having an

2018). Because "no cause of action would exist [against Sinful in the Underlying Action] but for the assault [or battery], . . . the exclusion applies." *Mount Vernon Fire Ins. Co.*, 88 N.Y.2d at 350. "This is so despite the conclusory allegations of negligence." *Sphere Drake Ins. Co. v. Block 7206 Corp.*, 237 A.D.2d 427, 428 (2nd Dep't 1997). Accordingly, Burlington did not owe a duty to defend Sinful in the Underlying Action.

**B.    Duty to Indemnify**

Under New York law, courts apply the same but-for test utilized in the duty to defend context. *See Mirman v. Exec. Risk Indem., Inc.*, 474 F. Supp. 3d 609, 614–15 (S.D.N.Y. 2019) ("Where no cause of action could be proved but-for conduct excluded by the policy, an insurer has no obligation to defend or indemnify."). However, the duty to indemnify "is determined by the actual basis for the insured's liability to a third person, and does not turn on the pleadings, but rather on whether the loss, as established by the facts, is covered by the policy." *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 150 (2d Cir. 2016). And because "the duty to indemnify is narrower than the duty to defend, it 'is unnecessary to engage in a separate analysis' of that claim." *MIC Gen. Ins. Co. v. Allen*, 697 F. App'x 717, 720 (2d Cir. 2017) (summary

---

argument with the injured party during which the injured party picked up a steel bar stool. *Id.* at 633. The employee testified that he believed the injured party's intent was to strike him with the bar stool, but that he was prevented from doing so by another patron who seized hold of it. *Id.* It was then that the employee grabbed the baseball bat, ran from behind the bar and struck a hard blow to the injured party's leg. *Id.* The Court held that each of the injured party's negligence theories—negligent supervision and training of employees, negligent use of excessive force, failure to protect plaintiff, failure to provide proper security at the establishment, negligent striking of plaintiff with the baseball bat and negligence and carelessness in the removal of plaintiff from the bar— was "dependent on the assault and battery and, as they [were] solely and entirely within the exclusionary provisions of the assault exclusion, defendant ha[d] no duty to defend or indemnify plaintiffs." *Id.* at 635.

order) (quoting *EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2d Cir. 1990)); *see also W. Waterproofing Co., Inc. v. Zurich Am. Ins. Co.*, No. 20-CV-3199 (AJN), 2022 WL 329225, at *13 (S.D.N.Y. Feb. 3, 2022), *reconsideration denied,* No. 20-CV-3199 (AJN), 2022 WL 1501087 (S.D.N.Y. May 11, 2022) ("[B]ecause there is no obligation to defend [the insured under the policy], there is no duty to indemnify either."). Therefore, for the same reason that Burlington did not owe a duty to defend Sinful in the Underlying Action—no cause of action would exist but-for the assault or battery— Defendant does not owe a duty to indemnify Plaintiff in the Underlying Action.

However, because Plaintiff has already obtained a judgment in the Underlying Action, the Court will address his argument that the Assault and Battery Exclusion does not apply here because his judgment against Sinful was premised exclusively on negligence counts, and because the court made no finding of assault.[12] *See* Dkt. 18-8, at 7–8. Even if Plaintiff's argument that there "were never any findings of assault, battery, intentional act, or criminal conduct" is an attempt to dispute that the elements of

---

[12] Sinful was held liable for negligent hiring, training, and supervision in the Underlying Action. *See* Dkt. 15-9, at 1. Plaintiff does not argue that Sinful was found liable on any basis other than the assault that he alleged in the Underlying Action. Instead, he appears to argue that there was no finding of assault because the section 1983 claims against the officers—which revolved around the officer's alleged "willful[], malicious[], and intentional[]" assault of Plaintiff—were dismissed. But Plaintiff does not explain why those section 1983 claims against the officers and City were dismissed. The most likely explanation would be that Plaintiff failed to prove that the off-duty officers were acting under the color of state law while working security at the nightclub—not that they did not assault Plaintiff. And it is not apparent that Plaintiff brought an assault or battery claim against the police officers in the Underlying Action, but rather he claimed that the police officers, while acting under the color of state law, assaulted him in violation of his federal constitutional rights. *See* Dkt. 15-5, at ¶¶ 13, 15. Therefore, the dismissal of the section 1983 claims against the city and police officers does not change the set of facts alleged in the amended complaint that Plaintiff sought to—and did—hold Sinful liable for.

assault or battery were met in the Underlying Action, the broad scope of the Assault and Battery Exclusion would still exclude unintentional acts that may not qualify as battery or assault. *Id.* The Assault and Battery Exclusion applies not only to assaults and batteries, but also bodily injury or property damage "[a]rising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened verbal or physical confrontation or altercation." Dkt. 15-3, at 45. Whether or not the incident between Plaintiff and the police officer defendants—which Plaintiff alleged was an intentional, willful, and malicious assault—rose to the legal definition of assault or battery, the underlying incident is still excluded as an "actual or threatened verbal or physical confrontation or altercation." *Id.*; *see Fish v. Dryden Mut. Ins. Co.*, 23 Misc. 3d 1105(A), 885 N.Y.S.2d 711 (Sup. Ct. 2009) ("The scope of the assault and battery exclusion is broad. It applies to claims arising out of many acts which do not involve direct physical contact, for example, 'assault, . . . , altercation, misconduct or other similar incident or act of violence.' Under the circumstances of this case, the court concludes that even if Jody Fish's version of the incident is credited, i.e., that he did not push Stone, his conduct is nonetheless within the scope of the exclusion.").

      C.    **Punitive Damages Exclusion**

      Burlington also seeks a declaration that it has no duty to indemnify Plaintiff on behalf of Sinful for any punitive damages. *See* Dkt. 15-2, at 9. The Burlington Policy contains a Punitive Damages Exclusion, which excludes coverage for "[a]ny claim or

indemnification for punitive or exemplary damage."[13]  Dkt. 15-3, at 14. The plain

language of the Punitive Damages Exclusion bars Plaintiff's recovery of punitive or

exemplary damages.[14] Therefore, Burlington's request for a declaration that it has no

duty to indemnify Plaintiff for punitive damages in the Underlying Action is granted.

## III.   TIMELINESS OF BURLINGTON'S DISCLAIMER[15]

### A.   Disclaimer to Sinful

Plaintiff also argues that a material issue of fact exists surrounding whether

Burlington's disclaimer was untimely and thus void. Dkt. 18-8, at 4. Plaintiff first argues

---

[13] The Punitive Damages Exclusion also provides that "[i]f a 'suit' seeking both compensatory and punitive or exemplary damages has been brought against you for a claim covered by this policy, we will provide defense for such action." Dkt. 15-3, at 14. Therefore, the Punitive Damages Exclusion does not relieve Burlington of its potential duty to defend, and Burlington did not argue otherwise. *See Specialty Nat. Ins. Co. v. Eng. Bros. Funeral Home*, 606 F. Supp. 2d 466, 472 (S.D.N.Y. 2009) ("[T]he [underlying] complaint[] seeks both compensatory and punitive damages, a fact [the insurer] does not dispute, and accordingly, the plain language of its policy makes clear that [the insurer] owes [the insured] a duty to defend it in each of these actions.").

[14] Even in the absence of the Punitive Damages Exclusion, Plaintiff cannot recover punitive damages from Burlington because "an insurer may not indemnify an insured for a punitive damages award, and a policy provision purporting to provide such coverage is unenforceable." *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 21 N.Y.3d 324, 334 (N.Y. 2013).

[15] "The notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated." *Gen. Acc. Ins. Grp. v. Cirucci*, 46 N.Y.2d 862, 864 (N.Y. 1979). "New York courts have held that the disclaimer remains valid as long as it 'identified the applicable policy exclusion and set forth the factual basis for the insurer's position that the claim fell within a policy exclusion with sufficient specificity to satisfy the statutory mandate and purpose.'" *Atl. Cas. Ins. Co.*, 548 F. App'x at 664 (quoting *Adams v. Perry's Place,* 168 A.D.2d 932, 932 (4th Dep't 1990)). Although neither party addresses the issue, Burlington's notice of disclaimer sufficiently identified the grounds for its denial of coverage—relevant here, the Assault and Battery Exclusion and Punitive Damages Exclusions. *See Cnty. of Niagara v. Liberty Mut. Ins. Co.*, No. 14-CV-737-FPG, 2020 WL 597168, at *3 (W.D.N.Y. Feb. 7, 2020), *aff'd*, 839 F. App'x 581 (2d Cir. 2020) (disclaimer that "expressly

that Burlington's disclaimer to Sinful, issued one year after the underlying incident, is untimely under § 3420(d). *See* Dkt. 18-8, at 9.

New York Insurance Law § 3420(d)(2) provides as follows:

If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury . . . it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or other claimant.

Such disclaimer "is necessary when denial of coverage is based on a policy exclusion without which the claim would be covered." *Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 188–89 (N.Y. 2000). "Failure to comply with section 3420(d) precludes denial of coverage based on a policy exclusion." *Id.* at 189; *see also Maple Grove Corp. v. Colony Ins. Co.*, No. 10-CV-00942S F, 2012 WL 4049618, at *7 (W.D.N.Y. Aug. 15, 2012), *report and recommendation adopted*, No. 10-CV-00942S F, 2012 WL 4086718 (W.D.N.Y. Sept. 11, 2012) ("[E]ven if the complaint's allegations establish that an insurance exclusion applies, failure to timely disclaim coverage based on the exclusion renders the exclusion inapplicable.").

The "timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 68–69 (N.Y. 2003) (citation omitted). But "because 'an insurer's obligation to disclaim coverage as to a particular insured does not arise until that insured has provided notice of the occurrence or claim,' . . . an insurer cannot learn of grounds for disclaimer as to a particular insured, for purposes of § 3420(d), until that insured has given notice of its

identified and disclaimed coverage" under relevant exclusion "apprised insured with a 'high degree of specificity' of the grounds on which disclaimer was predicated").

claim." *Century Sur. Co. v. EM Windsor Constr. Inc.*, No. 16 CIV. 4196 (PAE), 2017 WL 5952706, at *9 (S.D.N.Y. Nov. 29, 2017) (quoting *Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.,* 368 F.3d 209, 214 (2d Cir. 2004)). Indeed, "an insurer can hardly be said to have sufficient facts to issue a disclaimer before the insured has provided notice, because the insurer has no reason to anticipate that an insured will seek coverage until it is actually so notified." *Webster*, 368 F.3d at 216. Therefore, "the clock begins to run on an insurer's duty to disclaim only after an insured has provided notice." *Century Sur. Co.*, 2017 WL 5952706, at *9; *see also JT Magen v. Hartford Fire Ins. Co.*, 64 A.D.3d 266, 269 (1st Dep't 2009) ("[A]n insurance carrier's duty to timely disclaim is not triggered until an insured satisfies a notice of claim provision in an insurance contract, because that provision is a condition precedent to coverage, and absent a valid excuse, the failure to satisfy the notice requirement vitiates the policy."); *U.S. Underwriters Ins. Co. v. Falcon Const. Corp.*, No. 02 CIV. 4182 (CSH), 2007 WL 1040028, at *11 (S.D.N.Y. Apr. 4, 2007) ("An insurer is obligated to disclaim coverage within a reasonable amount of time following the insured's notice to the insurer of the occurrence or claim.").

According to Plaintiff, it remains unclear "when Burlington was first notified of the loss, when it was first notified of the lawsuit against its insured, and when Burlington's insured first demanded coverage in connection with the incident."[16] Dkt. 18-8, at 9. The relevant inquiry here is when Sinful first provided notice to Burlington, and, in turn, when

---

[16] When Burlington was first notified of the lawsuit against its insured is not relevant here. Burlington sent a disclaimer to Sinful on January 16, 2014. *See* Dkt. 15-11. Plaintiff did not initiate the Underlying Action until March 14, 2014, over two months after Burlington first disclaimed coverage. *See* Dkt. 15-4.

Burlington disclaimed coverage to Sinful. *See Webster*, 368 F.3d at 214. In support of

its motion, Burlington submitted an affidavit from Mitchell Jacobs, a Regional Claims

Manager for Burlington. *See* Dkt. 15-24. According to Jacobs:

> 6. Burlington had no notice of the underlying incident involving Plaintiff
> Derrick Anderson or the Notice of Claim Plaintiff Derrick Anderson filed
> against the City of Buffalo and the Buffalo Police Department until January
> 6, 2014 when Lawley Agency LLC (on behalf of Sinful) sent Burlington
> notice of the incident, as well as a copy of the Notice of Claim filed by
> Plaintiff Anderson against the City of Buffalo and the Buffalo Police
> Department.
>
> 7. By letter dated January 16, 2014, Burlington disclaimed coverage to
> Sinful based on, inter alia, the Assault, Battery Or Other Physical Altercation
> Exclusion and the Punitive Damages Exclusion.

*Id.* at ¶¶ 6, 7. Burlington also submitted the notice of the incident that Lawley Agency

LLC sent on behalf on Sinful, which is dated January 6, 2014. *See* Dkt. 15-10, at 1–2.

Therefore, Burlington contends that the ten-day delay between receipt of the notice of

claim and issuance of the disclaimer is reasonable as a matter of law. *See* Dkt. 19, at 5.

Plaintiff argues that the Jacobs affidavit should not be considered. *See* Dkt. 18-7, at 6.

Instead of pointing to evidence to contradict Defendant's assertion, Plaintiff contends

that the affidavit is "not a factual document that is filled with, at best, statements that

have not undergone the scrutiny of paper discovery or deposition" and Defendant has

failed to comply with its discovery obligations.[17] *See id.*

---

[17] Plaintiff also argues that Burlington's motion is premature because "plaintiff is entitled
to responses to his outstanding demands for discovery that is material and necessary to
his claims that the exclusions cited in Burlington's disclaimer do not apply and that
Burlington's disclaimer is defective." Dkt 18-8, at 4. According to Plaintiff, at this stage in
discovery, it remains unclear "when Burlington was first notified of the loss, when it was
first notified of the lawsuit against its insured, and when Burlington's insured first
demanded coverage in connection with the incident." Dkt. 18-8, at 9. In opposing
Burlington's motion for summary judgment, Plaintiff "did not submit a Rule 56(f) affidavit,
but made reference to a need for additional discovery in its memorandum in opposition

An affidavit "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Jacobs's affidavit, made on personal knowledge, states that he is a Regional Claims Manager for Burlington, that his job duties include overseeing the investigation and settling of claims, that he has access to Burlington business records, including those related to this matter, and that he reviewed those files to become fully familiar with the underlying facts of this action. *See* Dkt. 15-4, at ¶¶ 2, 3. Therefore, the Court finds the Jacobs affidavit and supporting exhibit sufficient to demonstrate that Burlington first received notice of the underlying incident on January 6, 2014. *See Underberg v. Dryden Mut. Ins. Co.*, 173 A.D.3d 1653, 1655 (4th Dep't 2019) ("Defendant met its initial burden on its motion for summary judgment by submitting the affidavit of its claims manager, who averred that defendant was first notified of the November 14, 2008 incident on February 3, 2011, and it disclaimed coverage two weeks later, which we agree is timely as a matter of law."); *U.S. Bank Tr., N.A. as Tr. for LSF8 Master Participation Tr. v. Tabasco*, No. 115CV410GLSDJS, 2018 WL 6505534, at *3 (N.D.N.Y. Dec. 11, 2018).

---

to the motion. A reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit, . . . and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) (internal citations omitted). Moreover, even if Plaintiff had submitted the required affidavit, his "argument is that [he] should be allowed to find out if [he] has a claim, rather than that [he] has a claim for which [he] needs additional discovery. Such divagation is decidedly not the object of the discovery procedures outlined in the Federal Rules of Civil Procedure." *Id.* at 1138. The "bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)." *Id.* Thus, Plaintiff's request that Burlington's motion be denied as premature is denied.

("Despite [Plaintiff]'s disjointed arguments attacking [Jacobs]'s affidavit, the affidavit clearly satisfies the requirements of Fed. R. Civ. P. 56(c)(4) because it is made on personal knowledge, sets out facts that would be admissible in evidence, and shows that [Jacobs] is competent to testify on the matters stated therein.").

Accordingly, Burlington's obligation to disclaim coverage to Sinful arose on January 6, 2014, when it first learned of the underlying incident.[18] Burlington issued a disclaimer ten days later, on January 16, 2014. *See* Dkt. 15-11, at 1–8. This ten-day period falls well within the thirty-day window that courts routinely hold, as a matter of law, to be a reasonable timeframe. *See, e.g., Liberty Ins. Underwriters Inc. v. Great Am. Ins. Co.*, No. 09 CIV 4912 DLC, 2010 WL 3629470, at *9 (S.D.N.Y. Sept. 17, 2010) ("New York courts have found that a disclaimer of coverage issued within a month after the insurer obtains sufficient facts to form the basis of the disclaimer is, as a matter of law, reasonable.") (collecting cases); *White v. Nat'l Specialty Ins. Co.*, No. 13 CV 2319 RJD MDG, 2014 WL 3871351, at *2 (E.D.N.Y. Aug. 6, 2014) (holding ten-day period is reasonable as a matter of law); *Mu Yan Lin v. Burlington Ins. Co.*, No. 11 CIV. 33 PGG, 2012 WL 967633, at *10 (S.D.N.Y. Mar. 21, 2012) (thirteen-day delay reasonable as a matter of law). However, "the New York Court of Appeals has specifically declined to adopt [such a] bright-line rule . . . ." *Erie Painting & Maint., Inc. v. Illinois Union Ins. Co.*, 876 F. Supp. 2d 222, 231 (W.D.N.Y. 2012). As the Court of Appeals explained, "most often the question whether a notice of disclaimer has been sent 'as soon as is

---

[18] Even if Burlington's obligation to disclaim arose as soon as it learned of the underlying incident or Plaintiff's notice of claim to the City, the Jacobs affidavit is sufficient to establish that Defendant first became aware of the underlying incident when it received the notice from Lawley on January 6, 2014.

reasonably possible' will be a question of fact, dependent on all of the circumstances of a case that make it reasonable, or unreasonable, for an insurer to investigate coverage." *Jetco Contracting Corp.*, 1 N.Y.3d at 70. Here, Burlington received notice of the claim approximately one year after the underlying incident occurred. Ten days later, it issued a detailed disclaimer explaining the bases for its denial of coverage. The Court concludes that this ten-day delay was reasonable as a matter of law. *See Underberg*, 173 A.D.3d at 1655 (disclaimer issued two weeks after insurer first notified of the claim was timely as a matter of law); *Northfield Ins. Co.*, 252 F. Supp. 3d at 170 ("[I]n light . . . the eight-month delay between the incident and [the insurer's] learning of it, the 19–day gap is reasonable as a matter of law.").

**B.    Notice to Plaintiff**

Plaintiff also argues that he did not receive notice of Burlington's disclaimer until October 2015 because Burlington sent the original disclaimer to Plaintiff's former attorney.[19] An "insurer's obligation to disclaim coverage directly to an injured party is triggered only upon the injured party's provision of notice of the occurrence." *Travelers Indem. Co. of Am. v. Est. of Zeygermakher ex rel. Sidon*, 427 F. App'x 30, 32 (2d Cir. 2011) (summary order); *see Webster* 368 F.3d at 217 (holding that insurer's obligation to disclaim coverage as to the injured party arises only upon injured party's provision of notice to insurer). Plaintiff does not claim that he ever provided notice of the claim to Burlington. Because "it is undisputed that [Plaintiff] never provided notice to [Burlington], this fact alone vitiates his contention that [Burlington] was obligated to disclaim as to

---

[19] The Court notes that it is not clear that Plaintiff can assert such an argument in this § 3420(b) action. In any event, as discussed below, Burlington did not owe a duty to disclaim coverage as to Plaintiff.

him." *Webster*, 368 F.3d at 218 n.6. Accordingly, Burlington was not obligated to

disclaim as to Plaintiff. *See id.* at 217 ("Because [the injured party] never provided

notice to [the insurer], the insurer was not . . . obligated to send a separate notice of

disclaimer to [the injured party].").[20] Burlington's request for a declaration that it owed no

coverage duties to Sinful for the Underlying Action is granted, and Plaintiff's claim that

Burlington was obligated to give him notice of the disclaimer is denied as a matter of

law.

## IV.    MOTION TO STAY DISCOVERY AND MOTION FOR COSTS

In light of the foregoing, Burlington's motion to stay discovery (Dkt. 17) pending

disposition of its summary judgement motion is denied as moot.

Burlington also requests that the Court order Plaintiff to pay its reasonable

expenses incurred in mediation. *See* Dkt. 15-1, at 10–13. Fed. R. Civ. P. 16(f)(1)(C)

authorizes sanctions if a party or its attorney "fails to obey a scheduling or other pretrial

order." The court "must order the party, its attorney, or both to pay the reasonable

expenses—including attorney's fees—incurred because of any noncompliance with this

rule, unless the noncompliance was substantially justified or other circumstances make

an award of expenses unjust." Fed. R. Civ. P. 16(f)(2)

This Court's scheduling order, entered on June 4, 2019, required "[c]ompliance

with the mandatory requirements found in Rule 26(a)(1) of the Federal Rules of Civil

Procedure . . . no later than July 12, 2019." Dkt. 11, at ¶ 3. Burlington provided its initial

---

[20] Even if Plaintiff had provided notice to Burlington after January 6, 2014, Burlington
would not have been required to disclaim as to him. *See Webster*, 368 F.3d at 218 n.6
("Where . . . the insured party gives notice and the injured party only later provides
notice, the injured party's notice is 'superfluous' and the insurer need not disclaim as to
the injured party."); *see also Travelers,* 427 F. App'x at 32.

disclosures to Plaintiff on July 12, 2019. Dkt. 18-7, at ¶ 24; *see* Dkt. 15-19. Plaintiff did

not provide its initial disclosures to Burlington until September 9, 2019. *See* Dkt. 15-2, at

¶ 24; Dkt. 15-20. Plaintiff's failure to provide Defendant with his initial disclosures by the

required deadline violated this Court's scheduling order. Plaintiff offers no justification,

but rather asserts that such issues are "immaterial to the claims at issue." Dkt. 18-7, at ¶

25. But Burlington does not identify any costs incurred as a result of Plaintiff's late

disclosure, and therefore the Court finds that an award of costs is not appropriate here.

The Court also ordered the parties to "confer and select a Mediator, confirm the

Mediator's availability, ensure that the Mediator does not have a conflict with any of the

parties in the case, identify a date and time for the initial mediation session, and file a

stipulation confirming their selection on the form provided by the Court no later than July

12, 2019." Dkt. 11, at ¶ 4. Burlington submitted email correspondence between the

parties indicating that, on September 9, 2019, Plaintiff's counsel provided a list of three

proposed mediators. *See* Dkt. 15-20. Defense counsel responded on September 13,

2019, informing Plaintiff's counsel that it "d[id] not[] even see the need to proceed with

mediation" because it appeared that Plaintiff had no basis for his claim that Burlington's

disclaimer was untimely. *See* Dkt. 15-23. Defense counsel also informed Plaintiff of its

preferred mediators in the event the parties were to select mediators. *Id.* Plaintiff's

counsel never responded to that email, and the Court *sua sponte* appointed a mediator

on October 21, 2019. *See* Dkt. 17. The Court does not find these communications—

which occurred after the deadline for selection of a mediator had already passed—

sufficient to impose sanctions on Plaintiff. Therefore, Burlington's request for sanctions

and costs is denied.

## CONCLUSION

For the above reasons, Burlington's motion for summary judgement (Dkt. 15) is GRANTED in full. Burlington's request for a declaration that it has no coverage obligation in connection with the Underlying Action is GRANTED. Burlington's request for a declaration that it has no duty to indemnify Plaintiff on behalf of Sinful for any punitive damages is GRANTED. Burlington's motion to stay discovery (Dkt. 17) is DENIED as moot and request for sanctions and costs is DENIED. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**DATED:**      **June 1, 2023**
              **Buffalo, New York**

                              _s/ H. Kenneth Schroeder, Jr._
                              **H. KENNETH SCHROEDER, JR.**
                              **UNITED STATES MAGISTRATE JUDGE**